Mirel Fisch, Esq.
The Law Office of Mirel Fisch
*Attorneys for Plaintiff*
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210
(929) 382-4933

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------------------------------X

SEAN WASHINGTON,

                *Plaintiff*,

-against-

DETECTIVE JAMES WILSON,
INVESTIGATOR HARRY GLEMSER,
and SERGEANT SERAPIO CRUZ,

                *Defendants*.

----------------------------------------------------------------X

Case No.:
**22-cv-749**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Sean Washington, by and through his attorneys, The Law Office of Mirel Fisch, alleges as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983, and 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 2202.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff Sean Washington ("Washington"), is a resident of the County of Camden, State of New Jersey.

5. Defendant Detective James Wilson ("Det. Wilson"), who also goes by the name "Jim," was at all relevant times a detective with the City of Camden Police Department, which is located in the County of Camden, State of New Jersey. At all relevant times herein, he acted

under color of state law and within the scope of his employment, and in his individual capacity. Det. Wilson is being sued in his individual and official capacities.

6. Defendant Investigator Harry Glemser ("Inv. Glemser"), was at all relevant times an Investigator with the Camden County Prosecutor's Office, which is located in the County of Camden, State of New Jersey. At all relevant times herein, he acted under color of state law and within the scope of her employment, and in his individual capacity. Inv. Glemser is being sued in his individual and official capacities. Despite being employed by the Prosecutor's Office, Inv. Glemser is not entitled to absolute prosecutorial immunity given that, prior to the commencement of the criminal prosecution, he acted merely as a police officer in Inv. the crimes at issue.

7. Defendants Sergeant Serapio Cruz ("Sgt. Cruz"), was at all relevant times a sergeant with the City of Camden Police Department, which is located in the County of Camden, State of New Jersey. At all relevant times herein, he acted under color of state law and within the scope of his employment, and in his individual capacity. Sgt. Cruz is being sued in his individual and official capacities.

8. Plaintiff is placing Defendants on notice that should he learn of additional conduct committed by Defendants which may give rise to liability, or of the identities of additional individuals who committed acts, or failed to act, which may give rise to liability, that he will seek to amend his Complaint to allege additional claims and/or to name additional defendants, accordingly.

## FACTUAL AND GENERAL ALLEGATIONS

9. This action is based upon Defendants' misconduct during the course of their investigation into the January 28, 1995 murders of Rodney Turner and Margaret Wilson, wherein they framed Washington, and another individual by the name of Kevin Baker, for those murders, despite knowing that the two were not involved in the crime. Washington was convicted on July 31, 1996, and after numerous attempts to challenge the conviction, on February 11, 2020, his conviction was vacated and the indictment against him was dismissed.

10. Due to the upcoming statute of limitations in this action, this Complaint contains limited basic allegations necessary to support the claims alleged herein. To amplify some of the factual allegations giving rise to the claims, Plaintiff incorporates, where appropriate, facts contained in the August 31, 2017 Opinion of the Court After Evidentiary Hearing, *see* Exhibit A annexed hereto, as well as the December 26, 2019 decision by the Appellate Division of the State of New Jersey. *See* Exhibit B annexed hereto.

11. However, Plaintiff is placing Defendants on notice that he will be amending his Complaint to expound on the facts and claims, within the timeframe provided for by the Federal Rules of Civil Procedure. Additionally, should Defendants move to dismiss any claim contained herein based upon an alleged pleading deficiency, Plaintiff is requesting leave to re-plead in order to supplement the claims with the pertinent allegations.

12. Just before 6:00 AM on January 28, 1995, Rodney Turner and Margaret Wilson were both shot and killed in the Roosevelt Manor housing complex, near Phillip (or Phillips) and 8th Street, in Camden, New Jersey. It is believed that they were both killed by an individual named Raheem Miller.

13. Shortly thereafter, Washington, who had been home cooking chicken at the time of the murders, went outside and noticed the bodies lying in a pool of blood, and he immediately called 911.

14. Det. Wilson and Inv. Glemser were among the police personnel who responded to the scene, and they lead the investigation into the murders.

15. Det. Wilson and Inv. Glemser both knew that Washington did not commit the murders, for several reasons. For example, several witnesses told police that they saw Washington coming from the opposite direction of where the murders occurred, saw him stumble upon the bodies at which point he made spontaneous utterances in shock, such as "Oh shit!" and "They dead, they dead, omg they dead," and then they saw him go to a pay phone to make a call.

16. Additionally, Defendants were in possession of, and had listened to, Washington's 911 recording which alerted police to the shooting, which clearly indicated that the caller had just come across the bodies unexpectedly, and that he was not involved in the crime. *See* Exhibit C; *see also* Ex. B at 41, 69-70. In the 911 call, he clearly sounded distraught and started crying, as he stated "Hello, yo send the police, and the ambulance, and the coroner's office, to 8th and Central please. . . I just found two dead people, and . . . and laying in a fucking pool of blood . . . Just send somebody please." *See* Exhibit C. Defendants knew that Washington was the 911 caller because several other witnesses told the police that they saw Washington place the 911 call. Additionally, the 911 caller's voice clearly and distinctly matched Washington's, and Defendants heard Washington's voice when they spoke with him.

17. Defendants also knew that Baker was not responsible for the murders, either, as Michelle Redding told them that Baker was at her apartment from approximately 2:30 that morning, and that he remained there with her until the following day.

18. Despite that, Defendants decided to frame Washington and Baker for the murders.

19. On February 2, 1995, several days after the murders, Det. Wilson and Inv. Glemser spoke with two cousins, Denise Rand and Tyrone Moore. They had been standing at the corner of Van Hook and 10th Street at the time of the murders. They did not see the shooting, and did not see who shot Turner or Wilson. However, they heard the gunshots, and then walked toward the location where the sounds had come from. *See* Exhibit D.

20. Rand and Moore were both interviewed separately, however they both stated that they merely heard the gunshots, but did not actually see the shooting itself. Therefore, Defendants intentionally did not document these interviews.

3

21. Rand was a prostitute who abused drugs heavily. She admitted to the police that she was in the area at the time because she had gone to the Roosevelt Manor housing complex in order to buy drugs. She admitted to them that she had smoked crack cocaine approximately two hours before the shootings, and that at the time, she smoked crack every two to three hours.

22. Det. Wilson and Inv. Glemser then pressured and coerced Rand into changing her story. They bribed her, and also threatened her with prosecution, if she did not change her story to implicate Washington and Baker by stating that she personally observed them shoot Turner and Wilson.

23. After some time, Det. Wilson and Inv. Glemser succeeded in having Rand change her story to falsely implicate Washington and Baker, at which point they now did record the interview.

24. Based upon the agreed account with Det. Wilson and Inv. Glemser pressured and coerced Rand into providing, she stated that she was with Moore when she saw Washington and Baker, who were both holding guns, run up to Turner and Wilson, stop and shoot them, and then run away. *See* Exhibit E.

25. Det. Wilson and Inv. Glemser attempted to coerce Moore into giving a statement implicating Washington and Baker, by, among other tactics, threating to pend drug charges on him. However, he refused to lie, and refused to provide a statement falsely implicating Washington and Baker. *See* Exhibit D.

26. Accordingly, given that Rand had already confirmed that she was with Moore at the time of the shooting, and given that Det. Wilson and Inv. Glemser were not successful in their attempts to coerce Moore into providing a false narrative, Defendants acted to undermine Moore's credibility so that he, in turn, should not be able to discredit Rand's account.

27. Det. Wilson and Inv. Glemser decided to subject Moore to a polygraph examination by Sgt. Cruz, who was not qualified to conduct the examination. The three of them discussed the purpose of the polygraph examination, and that it was necessary in order to undermine Moore's credibility. Accordingly, after completing the examination, Sgt. Cruz falsely concluded in his report that Moore was "LYING" when he denied being present at the scene of the crime at the time of the murders, and denied knowing the names of the shooters. *See* Exhibit F.

28. The following week, on February 9, 1995, Det. Wilson and Inv. Glemser spoke with Rand again, to have her 'clarify' certain facts in the recorded statement she had provided, and to specifically distance herself from Moore during the time she agreed to claim that she saw the shooting occur. *See* Exhibit G.

29. Defendants committed additional improprieties during the 'investigation' into the murders, some of which are noted in the August 31, 2017 Opinion of the Court After Evidentiary Hearing, see Exhibit A, and the December 26, 2019 decision by the Appellate Division. *See* Exhibit B.

30. After securing the false evidence noted above, and despite knowing that Washington and Baker were not involved, and certainly did not commit, the murders, Defendants initiated the prosecution against them.

31. They forwarded the fabricated evidence noted above to the prosecutors at the Camden County Prosecutor's Office. Additionally, they did not tell the prosecutors that Rand and Moore were not in fact present at the scene of the crime at the time the murders occurred, and that they did not see who shot Turner or Wilson. So too, they withheld from the prosecutors all evidence of the improprieties they committed in order to secure Rand's false narrative and Moore's false polygraph results.

32. On February 14, 1995, Det. Wilson and Inv. Glemser obtained arrest warrants for Washington and Baker based upon the fabricated information. While Sgt. Cruz did not personally obtain the warrants, he was responsible for the warrants being issued because he created the factual information which purported to undermine the credibility of Moore, which lead the prosecutors and judges to believe that Rand's fabricated account of the events were credible despite Moore indicating otherwise.

33. Baker was arrested on February 15, 1995. Washing had left the area when he learnt that police were looking for him, and he was arrested upon his return on March 21, 1995.

34. The case was presented to a Grand Jury in August 1995, and Washington was indicted on the following six crimes: Count 1: Conspiracy to Commit Murder, in violation of N.J.S. 2C:5-2; Count 2: Murder in the First Degree (as to Turner), in violation of N.J.S. 2C:11-3a; Count 3: Murder in the First Degree (as to Wilson), in violation of N.J.S. 2C:11-3a; Count 4: Possession of a Weapon in the Second Degree, in violation of N.J.S. 2C:39-4a; Count 5: Unlawful Posessin of a Weapon in the Third Degree, in violation of N.J.S. 2C:39-5b; Count 7: Possession of a weapon, in violation of N.J.S. 2C:39-7. *See* Exhibit H.

35. While the Grand Jury indicted Washington, they did so based upon the fact that the exculpatory information which Defendants were in possession of was not presented to the Grand Jury, rather, they were only presented with the fabricated information which Defendants forwarded to the prosecutors.

36. For example, on August 3, 1995, Inv. Glemser testified regarding the false narrative which he and Det. Wilson coerced Rand into providing. *See* Exhibit I at 6:17-8:2. However, he did not tell the Grand Jury that Rand initially denied being present and witnessing the murder and that she was coerced and pressured into changing her story. *See generally id.* He likewise did not tell the Grand Jury that Rand was nonetheless not a credible witness because she high on crack cocaine at the time of the murders. *See id.* While Inv. Glemser did note that Moore denied being at the scene of the shooting when it happened, he testified that other witnesses placed Moore there, however he did not clarify that these witnesses had told police that they only saw Moore at the scene of the crime *after* the shooting had already occurred. *See id.* at 5:2-15, 8:3-13.

37. Accordingly, the indictment was procured by fraud, perjury, the suppression of evidence, and other actions taken in bad faith.

38.  Thereafter, on July 31, 1996, after a two-day jury trial in the Superior Court of Camden County, Washington and Baker were found guilty of the murders of Turner and Wilson. The judgments of conviction were entered on September 20, 1996.

39.  Defendants acted maliciously and/or wantonly in reckless disregard of Washington's rights. They initiated, and thereafter continued, the criminal proceedings against Washington despite knowing there was no probable cause to do so, and were responsible for putting false information into the record.

40.  Based upon the improprieties noted above, as well as additional facts noted in Exhibits A and B, Washington and Baker's convictions were vacated on December 26, 2019 (the vacature however was stayed), and their cases were remanded for a new trial. *See* Exhibit B. The Camden County Prosecutor's Office elected not to retry them, and on February 11, 2020, the September 20, 1996 Judgement of Conviction was vacated. The State of New Jersey moved to dismiss the indictment against Washington and Baker, and on February 11, 2020, the motion was granted and the indictments were dismissed, with prejudice. *See* Exhibit J; Exhibit K.

41.  As a direct and proximate result of Defendants' actions, Washington suffered, and continues to suffer, mental and emotional distress, humiliation, damage to reputation, and lost employment opportunities and earnings. Washington lost 25 years of his life while he remained confined in the custody of the State of New Jersey, where there too, he suffered physically, mentally, and emotionally. For example, he was assaulted in prison, which caused him to develop multiple sclerosis, which he continues to suffer from, and will continue suffering from in the future.

## CAUSES OF ACTION

### ONE
### 42 U.S.C. § 1983 – Malicious Prosecution (4th Amendment)

42.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-41 as though fully set forth herein.

43.  Defendants initiated and continued a criminal proceeding against Washington, and did so without probable cause.

44.  Each Defendant knew that the other Defendants were violating Washington's constitutional rights, and despite having an opportunity to prevent the violations from occurring, and from continuing, they failed to act, and allowed the violations to occur and to continue.

45.  Defendants acted maliciously and for a purpose other than bringing Washington to justice.

46.  The criminal proceedings terminated in Washington's favor on February 11, 2020.

47. Because of Defendants' conduct, Washington suffered a significant deprivation of liberty consisted with the concept of seizures until he was released from confinement on or about February 12, 2020.

## TWO
### 42 U.S.C. § 1983 – Due Process Fabricating/Falsifying Evidence (14th Amendment)

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-47 as though fully set forth herein.

49. Defendants fabricated and falsified evidence against Washington in order to create the false appearance that they had probable cause to charge Washington for the murders of Turner and Wilson and initiate a prosecution against him.

50. Defendants forwarded the false information and evidence to the prosecutors in this case, and they withheld from the prosecutors information which undermined Rand's credibility and otherwise tended to exonerate Washington.

51. Without the fabricated information and evidence, Washington would not have been charged, indicted, or convicted, as the fabricated evidence formed the basis of probable cause in this case.

52. Each Defendant knew that the other Defendants were violating Washington's constitutional rights, and despite having an opportunity to prevent the violations from occurring, and from continuing, they failed to act, and allowed the violations to occur and to continue.

## THREE
### 42 U.S.C. § 1983 – Due Process Withholding Exculpatory Evidence (14th Amendment)

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-52 as though fully set forth herein.

54. Defendants failed to inform, and affirmatively concealed from, the prosecutors in this case, of exculpatory information which undermined the belief that Washington was involved in, or that he committed, the murders of Turner and Wilson.

55. Each Defendant knew that the other Defendants were violating Washington's constitutional rights, and despite having an opportunity to prevent the violations from occurring, and from continuing, they failed to act, and allowed the violations to occur and to continue.

## FOUR
## 42 U.S.C. § 1983 – Conspiracy

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-55 as though fully set forth herein.

57. Det. Wilson and Sgt. Cruz, are part of distinct municipal entities from Inv. Glemser.

58. Despite all Defendants knowing that Washington (and Baker) were not involved in, and did not commit, the murders of Turner and Wilson, Defendants nonetheless agreed to frame Washington (and Baker), for the double murder. They did so despite knowing that they would be unlawfully depriving Washington (and Baker) of their liberty, and that they would be violating their constitutional rights.

59. They each committed specific acts outline above in furtherance of their conspiracy.

60. As a result thereof, they created the appearance that probable cause against Washington (and Baker) exhibited for the murders of Turner and Wilson. This directly resulted in Washington being criminally charged, indicted, and convicted of the murders.

**WHEREFORE**, Plaintiff requests the following relief jointly and severally as against all defendants:

1. A trial by jury on all issues;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages in an amount to be determined at trial;

4. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as this Court may deem just and proper.

Dated: February 10, 2022

                                            The Law Office of Mirel Fisch
*Attorneys for Plaintiff*
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210
(929) 382-4933

By: _____
      Mirel Fisch
      mirel@mfischlaw.com