[ECF No. 91]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SEAN WASHINGTON,<br><br>                                **Plaintiff,**<br><br>      v.<br><br>DETECTIVE JAMES WILSON, et al.,<br><br>                                **Defendants.** | Civil No. 22-749 (KMW/EAP) |

**OPINION**

This matter comes before the Court on Plaintiff Sean Washington's motion to stay discovery pending the substitution of Defendant Sergeant Serapio Cruz's estate as a defendant in this matter. *See* ECF No. 91 ("Pl.'s Mot."). Defendant Detective James Wilson has opposed the Motion. *See* ECF No. 92 ("Def.'s Br."). The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL BACKGROUND**

A.    **Facts in the Amended Complaint**

Plaintiff's Amended Complaint centers on events regarding the January 28, 1995 murders of Rodney Turner and Margaret Wilson in Camden, New Jersey. ECF No. 22 ("Am. Compl.") ¶ 9. According to the Amended Complaint, sometime before 6:00 a.m. on January 28, 1995, Turner and Wilson were shot and killed in the Roosevelt Manor housing complex. *Id.* ¶ 12. Shortly thereafter, Plaintiff left home to make a phone call at a nearby pay phone at the Roosevelt Manor

Administration Building. *Id.* ¶ 13. Because he needed additional change to make his call, he went around the corner to see if anyone had change. *Id.* It was then that he discovered the two bodies lying in a pool of blood between two rows of houses. *Id.* Plaintiff immediately returned to the pay phone and called 911. *Id.*

Defendants Detective James Wilson and Investigator Harry Glemser led the investigation into the murders. *Id.* ¶ 14. Both Wilson and Glemser allegedly "knew that [Plaintiff] did not commit the murders, for several reasons." *Id.* ¶ 15. Despite other facts, Plaintiff alleges that Defendants decided to frame Plaintiff and another individual named Kevin Baker for the murders. *Id.* ¶ 18.

Several days after the murders, Wilson and Glemser allegedly spoke with cousins Denise Rand and Tyrone Moore, who had been standing nearby at the time of the murders. *Id.* ¶ 19. According to the Amended Complaint, Rand and Moore heard the gunshots but did not actually see the shootings. *Id.* ¶¶ 19-20. Plaintiff alleges that in a subsequent interview, however, Wilson and Glemser "persuaded and coerced" Rand into changing her story to implicate Washington and Baker in the murders "by stating that she personally observed them shoot" the victims. *Id.* ¶ 22. Wilson and Glemser then provided the transcript of her interview to the prosecutor's office but did not provide the audio-recorded statement. *Id.* ¶ 24.

Plaintiff further alleges that Wilson and Glemser also attempted to coerce Moore into giving a statement to corroborate Rand's account by threatening to press charge charges against him. *Id.* ¶ 28. He allegedly refused to implicate Plaintiff and Baker in the murders because neither he nor Rand had seen them occur. *Id.* Wilson and Glemser then subjected Moore to a polygraph examination by Defendant Sergeant Serapio Cruz. *Id.* ¶ 30. After completing the examination, Cruz allegedly "falsely concluded" that Moore was lying about not seeing the shooting or knowing the names of the shooters. *Id.*

Wilson and Glemser later interviewed witness Latasha Langston, who lived in an apartment near the murders. *Id.* ¶ 35. According to the Amended Complaint, Langston stated that she woke up to the gunshots, looked out the window, and saw a man walking toward Central Avenue and Kossuth Street. *Id.* Langston indicated that she then saw Moore approach the bodies and identify the victims to her. *Id.* ¶ 37. Langston did not identify any female being with Moore, which corroborated Moore's statement and contradicted Rand's. *Id.*

Wilson and Glemser also spoke to witness Deborah Tribbet, who allegedly told them she heard two shots fired and heard one person running from the scene. *Id.* ¶ 39. According to Plaintiff, her statement, along with Langton's, undermined Rand's story that there were two persons at the scene. *Id.*

Wilson and Glemser eventually arrested Plaintiff and Baker. *Id.* ¶¶ 42-43, 45-46. According to the Amended Complaint, Wilson and Glemser sent "fabricated evidence" to the Camden County Prosecutor's Office and failed to provide the prosecutors with exculpatory information. *Id.* ¶ 44. A grand jury indicted Plaintiff on six crimes: (1) conspiracy to commit murder; (2) murder in the first degree (Turner); (3) murder in the first degree (Wilson); (4) possession of a weapon in the second degree; (5) unlawful possession of a weapon in violation of N.J.S.A. 2C:39-4a; and (6) possession of a weapon in violation of N.J.S.A. 2C:39-7. *Id.* ¶ 47. Plaintiff alleges that the prosecutors only presented Defendants' fabricated evidence to the grand jury and not any of the exculpatory evidence. *Id.* ¶ 48. On July 31, 1996, after a two-day jury trial, Plaintiff and Baker were convicted of the murders. *Id.* ¶ 51.

Plaintiff pursued post-conviction relief through the state courts. On December 26, 2019, twenty-five years after the convictions, the New Jersey Superior Court vacated Plaintiff's and Baker's convictions and remanded their cases for new trials. *Id.* ¶ 53. The Camden County Prosecutor's Office elected not to retry them, and on February 11, 2020, the state court vacated the

judgment of conviction. *Id.* The State then moved to dismiss the indictment against Plaintiff and Baker, which the court granted with prejudice. *Id.*

**B.    Procedural History**

On February 10, 2022, Plaintiff filed suit against Defendants Wilson, Glemser, and Cruz.[1] Plaintiff filed an Amended Complaint, ECF No. 22, on July 12, 2022, setting forth the following causes of action under 42 U.S.C. § 1983: (1) malicious prosecution in violation of the Fourth Amendment (Count One), *id.* ¶¶ 55-60; (2) fabricating/falsifying evidence in violation of the Fourteenth Amendment (Count Two), *id.* ¶¶61-65; (3) withholding exculpatory evidence in violation of the Fourteenth Amendment (Count Three), *id.* ¶¶ 66-68; and (4) conspiracy, (Count Four), *id.* ¶¶ 69-73. As relief, Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and other such proper relief. *Id.* at 10 (Wherefore Clause).

During a March 25, 2024 status conference, counsel for Sgt. Cruz advised the Court that Cruz had passed away in January 2024. Pl.'s Mot. at 1. Plaintiff's counsel indicated her intention to substitute the estate as a defendant. *Id.* Plaintiff's counsel hired a Florida law firm to initiate probate proceedings in Florida State court, where Cruz resided. ECF No. 95 (Aug. 15, 2024 Ltr.). Since then, Plaintiff's counsel has provided several updates as to the status of those proceedings. *See* Status Update Letters, ECF Nos. 95, 99, 101.[2] On June 11, 2024, Plaintiff filed the current motion to stay proceedings until the probate proceedings were concluded and the substitution of Cruz's estate could be accomplished. *See* Pl.'s Mot. Defendant Wilson opposes the motion, citing the delays in conducting depositions in the matter, particularly Plaintiff's deposition. *See* Def.'s Br.

---

[1] Plaintiff agreed to voluntarily dismiss Defendant Glemser from the case based upon an "amicabl[e] adjust[ment]" between the parties. ECF No. 67.

[2] After he filed his motion, Plaintiff filed an additional status report at ECF No. 103.

## DISCUSSION

Although the Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings, Federal Rule of Civil Procedure 26(c) allows the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citations omitted). "The decision to stay proceedings requires an exercise of judgment, requiring courts to weigh the competing interests and hardships with respect to the movant and the non-movant." *Anglin v. Anglin*, No. 16-4049, 2020 WL 3496916, at *2 (D.N.J. June 29, 2020). Motions to stay proceedings are committed to a district court's "sound discretion." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (reviewing district court's denial of motion to stay for abuse of discretion). However, the Court is mindful that a stay of civil proceedings is an "extraordinary remedy." *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *3 (D.N.J. Apr. 26, 2016) (internal quotation marks and citation omitted). Indeed, "'[m]otions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) (quotation omitted).

Courts in this Circuit "generally weigh a number of factors in determining whether to grant a stay." *Actelion Pharms. Ltd. v. Apotex, Inc.*, No. 12-5743, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013). These factors include: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear

case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (cleaned up).  The party requesting the stay bears the burden of showing that a weighing of these factors justifies the Court's exercise of its discretion to stay.  *Id.* (citations omitted).

"With respect to the first factor, the Court considers whether a stay would unduly prejudice or clearly disadvantage the non-moving party." *Id.*  "Because delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." *Nussbaum v. Diversified Consultants, Inc.*, No. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) (cleaned up).

Here, Wilson claims that he has suffered prejudice because he has been unable to schedule Plaintiff's deposition since September 2022, when Wilson served his initial Notice of Deposition on Plaintiff.  Wilson, however, has not alleged any specific undue prejudice except for delayed judicial resolution.  Therefore, this factor weighs in favor of granting a stay.

Under the second factor, "the Court considers whether denial of the stay would create a clear case of hardship or inequity for the moving party." *Nussbaum*, 2015 WL 5707147, at *2.  Plaintiff contends that if the parties begin depositions prior to the substitution of Cruz's estate, the estate would be entitled to repeat those depositions when it is added as a party.  Pl.'s Mot. at 3.  Plaintiff's counsel objects to producing Plaintiff twice for his deposition, contending that it "would create hardship and inequity to Plaintiff." *Id.*  Defendant Wilson responds that he only seeks to take Plaintiff's deposition at this time, and that consequently, Plaintiff would not suffer "inequity from having Plaintiff deposed without the [e]state present."  Def.'s Br. at 2.  Wilson posits that any hardship could be ameliorated by limiting a potential second deposition to those topics not covered during the initial deposition.  *Id.* at 2; *see Ajax Enters. v. Fay*, No. 04-4539, 2007 WL 766335, at *3

6

(D.N.J. Mar. 7, 2007) (holding that second depositions required by the joinder of new parties could be limited to "new issues that arise because of the joinder of the new parties").

The Court finds this factor weighs against the stay. The critical issue for Defendant is taking Plaintiff's deposition. To the extent Plaintiff claims hardship in having to potentially appear twice for a deposition, the Court finds no hardship or inequity. As the party who initiated this case and who now seeks to substitute a new party, Plaintiff should neither be surprised nor unduly prejudiced by a potential second deposition. Although the Court initially agreed that taking Plaintiff's deposition twice would be inefficient, the probate proceedings have taken months, and at this point, no definitive completion date exists. *See* ECF No. 103. Therefore, as to Plaintiff's deposition, the Court finds that this factor weighs against a stay. However, to the extent that Defendant Wilson seeks to take depositions of non-parties, who may then be subject to a second deposition by Cruz's estate, the Court recognizes that the expense of repeating depositions could possibly cause hardship to Plaintiff.

As to the third factor, the Court must consider whether a stay would simplify the issues and trial of the case. *Nussbaum*, 2015 WL 5707147, at *3. Plaintiff concedes that a stay would not simplify the substantive issues but posits that "it may simplify potential issues pertaining to depositions and the use of transcripts down the road." Pl.'s Mot. at 3. Defendant Wilson responds that Plaintiff's arguments are speculative and may not develop later in the litigation. Def.'s Br. at 2. The Court agrees.

Plaintiff's argument about the use of the transcripts is unconvincing. This case has been pending since February 2022, and aside from written discovery, discovery has stalled. Defendant Wilson has been attempting to take Plaintiff's deposition since well before Defendant Cruz's passing. Absent that deposition, the parties remain unable to assess potential recovery/exposure and

7

to determine how best to proceed with the matter. Given the Court's responsibility to expedite discovery to foster the efficient resolution of cases, this factor weighs against a stay.

Finally, the Court considers whether discovery is complete or a trial date has been set. *Nussbaum*, 2015 WL 5707147, at *3. Given the absence of either completed discovery or a trial date, this factor weighs in favor of a stay.

Weighing all of these factors, the Court determines that a hybrid approach to the requested stay is appropriate. Defendant Wilson shall be permitted to take Plaintiff's deposition as soon as it can practically be scheduled. With respect to any remaining depositions, the Court will grant the stay until Defendant Cruz's estate can be substituted as a party.[3] An appropriate order follows.[4]

<u>s/Elizabeth A. Pascal</u><br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc: Karen M. Williams, U.S.D.J.

---

[3] Plaintiff's counsel shall continue to submit monthly updates to the Court as to the status of the probate proceedings. The Court's Order shall reflect this directive.

[4] Plaintiff also seeks an award of expenses for filing his motion pursuant to Rule 37(a)(5). Because the Court is denying the motion in part, an award of expenses is not appropriate here.